Filed 8/6/26  In re G.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re G.G., a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>S.G.,<br><br>    Defendant and Appellant. | F091399<br><br>(Super. Ct. No. JJV074225A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County. Frank Anthony Ruiz, Judge.

S. Lynne Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Jennifer M. Flores, County Counsel, and Marit Erickson, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Snauffer, J. and DeSantos, J.

## INTRODUCTION

S.G. (father) appeals from the juvenile court's orders made at a Welfare and Institutions Code[1] section 366.26 hearing terminating parental rights as to his minor child G.G. He contends the court erred by finding the Tulare County Child Welfare Services Agency (agency) adequately complied with inquiry provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA)[2] and the California Indian Child Welfare Act (§ 224 et seq.) (Cal-ICWA). The agency concedes prejudicial error.

We accept the agency's concession. We conditionally reverse the order terminating parental rights and remand for further proceedings to ensure compliance with ICWA and Cal-ICWA.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On June 2, 2022, the agency filed a juvenile dependency petition on behalf of then four-month-old G.G. alleging she came within the juvenile court's jurisdiction under section 300, subdivisions (b)(1) (failure to protect) and (g) (no provision for support). At the combined jurisdiction/disposition hearing on July 1, 2022, the juvenile court found G.G. came within its jurisdiction under section 300, subdivision (b)(1) and adjudged her a dependent of the court.

Because the sole issue on appeal is ICWA inquiry compliance, we need not set forth the complex procedural and factual details of the subsequent four years of G.G.'s dependency. Eventually, services for father and G.G.'s mother, J.G. (mother), were terminated, and on August 25, 2025, the juvenile court set a section 366.26 hearing for G.G. The contested section 366.26 hearing was conducted on February 23, 2026, at

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

2.

which parental rights were terminated, and adoption was selected as G.G.'s permanent plan. What follows are the details of the agency's documentation regarding ICWA inquiry and the court's relevant findings.

During the initial investigation, the social worker asked father if he had Indian ancestry. He said he might have remote Indian ancestry but did not know the name of the tribe. He stated he would contact family members to find out and signed a "PARENTAL NOTIFICATION OF INDIAN STATUS" (ICWA-020) form indicating none of the indicia tending to show that G.G. is an Indian child applied. Father further reported mother may have Sioux and Cherokee ancestry and provided the contact information of the maternal aunt who would have more information.

The social worker contacted the maternal aunt, Raymie G., who confirmed her family had Indian ancestry through the Sioux and Cherokee tribes and advised the social worker to contact the maternal grandmother for more information.

The social worker contacted the maternal grandmother, Ronda G., who informed the social worker the maternal great-great-great-grandmother, "Granny P[.]" resided on a reservation but did not know the name of the reservation and was not in possession of the registry. She gave the social worker the names of the maternal great-great-grandparents (Merle C. and Judith H.), and maternal great-grandparents (Patricia H. and Jim H.) and advised all were deceased. The maternal grandmother told the social worker that the maternal great-aunt, Laurieann B., may have more information and that she would provide the maternal great-aunt's contact information to the social worker at a later date. No subsequent attempts to contact the maternal great-aunt were documented.

The social worker prepared a "NOTICE OF CHILD CUSTODY PROCEEDINGS FOR INDIAN CHILD" (ICWA-030) form, indicating G.G. might be eligible for membership in Cherokee or Sioux tribes. The form included the parents' names and birth dates and other maternal biographical information. The information provided was somewhat inconsistent with the information contained in the agency's report. Judith H.

3.

and "Granny P[.]" were listed as maternal great-grandmothers rather than maternal great-great-grandmother and maternal great-great-great-grandmother, respectively. Jim H. was listed as maternal great-grandfather as reported, but Merle C. was also listed as a great-grandfather, rather than maternal great-great-grandfather. Information on the maternal great-grandmother, Patricia H., was not included. Under "[o]ther relative information," the names of the maternal aunt, Raymie G., and maternal great-aunt, Lauriann B., were listed.

The ICWA-030 form was mailed to several Sioux and Cherokee tribes, and the Bureau of Indian Affairs.

At the initial hearing conducted on June 3, 2022, the juvenile court made ICWA inquiry with father on the record. When asked if he had any reason to believe he had any Indian ancestry, father responded, "Down the line. It's very small." Father denied that he or G.G. were registered tribal members and indicated he did not believe any of his relatives were registered tribal members. He did not know what tribe he may have ancestry through. He confirmed that mother had Indian ancestry through Sioux and Cherokee tribes on the maternal grandmother's side. The court found there was "insufficient reason to believe" G.G. was an Indian child within the meaning of ICWA. Counsel for the agency indicated the agency would continue to follow up with inquiry.

The agency eventually received responses from four of the tribes to which ICWA-030 forms were sent indicating that G.G. was not an Indian child but received no responses from six of the tribes. It appears only one response was supplied to the court, and it indicated that based on the information provided, G.G. was not an enrolled citizen and did not meet enrollment eligibility of the tribe.

In December 2022, the social worker asked a paternal aunt about Indian ancestry, who replied that she would ask other family and get back to the social worker. Another paternal aunt reported her father had Aztec descent but that no one else in her family was enrolled or registered with a tribe.

4.

In February 2023, the agency reported that the parents were "cousins by marriage and therefore[,] inquiries with paternal and/or maternal family members are regarding both the mother and father."

In May 2025, the maternal grandfather, a non-relative extended family member, and mother were asked about and denied Indian ancestry.

In June 2025, the agency sent letters to three of G.G.'s relatives providing information about options to be involved with the dependency case that included requests for information regarding Indian ancestry. No responses to these letters were documented.

Throughout the proceedings, the juvenile court made multiple findings that there was insufficient reason to believe G.G. was or may be an Indian child within the meaning of ICWA. Following the section 366.26 hearing, the court signed written findings and orders, indicating in part, "The court has reviewed [ICWA-20 forms], evidence taken at earlier hearings, and reports and evidence filed by the agency. The court finds that the court and the agency have fulfilled their affirmative and ongoing duty of inquiry to determine whether the child is or may be an Indian child, including interviewing available extended family members, and that there is no reason to believe or know that the child is or may be an Indian child."

## DISCUSSION

Under Cal-ICWA, the court and county child welfare agency "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child,"[3] in order to determine whether the

---

[3] An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized Indian tribe. (25 U.S.C. § 1903(4) & (8); see Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

5.

proceedings must be conducted within the provisions of ICWA. (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9; Cal. Rules of Court,[4] rule 5.481(a).) As relevant here, the agency's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).)

When initial inquiry gives rise to a "reason to believe"[5] (but not sufficient evidence to determine there is a "reason to know"[6]) that an Indian child is involved in a proceeding, "further inquiry regarding the possible Indian status of the child" is required, which includes gathering additional biographical information from family members and contacting relevant tribes and the BIA. (§ 224.2, subd. (e)(2)(A)–(C); see § 224.3, subd. (a)(5) [listing the biographical information required].) Among the information

---

[4] All further rule references are to the California Rules of Court.

[5] "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated" in section 224.2, subdivision (d)(1) through (6). (§ 224.2, subd. (e)(1).)

[6] These enumerated grounds for "reason to know" are: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village …[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; and/or] [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d); see 25 C.F.R. § 23.107(c) (2026).)

6.

required to be gathered is: "All names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment, membership, or citizenship information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C).) "Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C).)

When the court or agency "knows or has reason to know" an Indian child is involved in the dependency proceeding, formal notice to the relevant tribes is required. (§ 224.3, subd. (a).)

The agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes." (Rule 5.481(a)(5).)

Before finding ICWA inapplicable, the juvenile court must make a finding that the agency conducted "proper and adequate further inquiry" and exercised "due diligence" in doing so, and that "there is no reason to know whether the child is an Indian child." (§ 224.2, subd. (i)(2).)

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child for substantial evidence, and the court's finding that the agency has conducted a proper and adequate inquiry and due diligence for abuse of discretion. (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601.)

Father argues there was reason to believe G.G. was an Indian child, triggering the agency's duty of further inquiry. Father goes on to argue the court's finding that the agency's inquiry was adequate was error because (1) the agency failed to document

7.

whether it asked the individuals with whom it made ICWA inquiry for the biographical information required by sections 224.2, subdivision (e)(2)(A) and 224.3, subdivision (a)(5), particularly as to the paternal side; (2) the agency failed to communicate with the relevant tribes appropriately under section 224.2, subdivision (e)(2)(C) because it did not document asking the tribes what information they required in order to make membership determinations and it communicated with them via certified mail rather than telephone, facsimile, or e-mail; and (3) of the information the agency did provide to the tribes, much of it was inaccurate and/or incomplete, and thus the tribes responses could not have been viewed as determinative of G.G.'s status as an Indian child.

The agency filed a letter brief conceding error and the necessity of conditional reversal and remand though it does not address any of father's specific contentions.

We agree that the maternal claims of specific tribal ancestry and/or possible affiliation and that one of G.G.'s direct lineal ancestors lived on a reservation gave the agency and juvenile court reason to believe G.G. was an Indian child, triggering the duty of further inquiry. We conclude that, at the very least, because the agency provided conflicting information about the relationships between certain extended family members and G.G., the juvenile court could not reasonably determine the biographical information sent to the relevant tribes in the ICWA-030 forms was accurate. Because there were multiple potential inaccuracies provided to the tribes here, and the record does not disclose what the tribes specifically required in order to make their determinations about whether G.G. was an Indian child, we cannot say the juvenile court could have reasonably concluded the agency's further inquiry was adequate. Thus, we agree the court abused its discretion by finding the agency's inquiry was adequate and accept respondent's concession.

We make no comment on father's remaining specific assertions about what Cal-ICWA requires, including but not limited to, documentation of attempts to gather biographical information unrelated to the claim giving a reason to believe the child is an

8.

Indian child and communication with the tribes by telephone, facsimile, or e-mail rather than certified mail.  Given the agency's concession, we do not believe we are in an appropriate position to address these claims and believe they are better left to be raised before the juvenile court for it to determine in the first instance.

## DISPOSITION

The order terminating parental rights is conditionally reversed.  The matter is remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of rule 5.481(a)(5).  If the court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), then the court shall reinstate the orders terminating parental rights.  If the court concludes ICWA applies, then it shall proceed in conformity with ICWA and Cal-ICWA.  (See 25 U.S.C. § 1912(a); Welf. & Inst. Code, §§ 224.2, subd. (i)(1), 224.3, 224.4; see also *In re Dezi C.* (2024) 16 Cal.5th 1112, 1125.)